IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LOREN GILLHOUSE, JR., ) | CV 11-79-M-DWM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| DANNY L. COX d.b.a. DANNY L. ) | |
| COX INSURANCE AND ) | |
| INVESTMENTS; CAPITAL ) | |
| RESOURCES AND INSURANCE, ) | |
| INC., a California corporation for ) | |
| profit; TRANSAMERICA ) | |
| OCCIDENTAL LIFE INSURANCE ) | |
| COMPANY, an Iowa corporation for ) | |
| profit; TRANSAMERICA LIFE ) | |
| INSURANCE COMPANY, an Iowa ) | |
| corporation for profit; and DOES ) | |
| A-Z, Inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. Introduction

Two motions are pending in this matter. In one, Plaintiff Loren Gillhouse,

Jr. ("Gillhouse") moves the Court to remand this case to the Montana Fourth Judicial District, Missoula County. He argues Danny Cox, a named defendant and citizen of Montana, was not fraudulently joined and therefore diversity of citizenship does not exist. In the other motion, Defendants Transamerica Occidental Life Insurance Company and Transamerica Life Insurance Company (collectively "Transamerica") move for dismissal on the grounds that the issues raised in Gillhouse's Complaint were resolved by a 1997 class-action settlement and judgment. For the reasons that follow, Gillhouse's motion to remand is denied, and Transamerica's motion to dismiss is granted.

## II. Background

In 1987, Gillhouse purchased a "Flexible Premium Policy" from Transamerica. He claims he did so based on representations made by Transamerica's general agent, Defendant Danny Cox, that a cash transfer of $62,000 and continuing premiums would cover the future administrative and insurance costs to maintain the policy for the rest of Gillhouse's life. For the next 22 years, Gillhouse paid approximately $2,600 a year to maintain the policy. That abruptly changed in July 2010, when Transamerica informed him that his premium had increased to over $35,000 and that no cash value remained in the policy.

Gillhouse brought this action in state court, alleging claims of negligent

misrepresentation, constructive fraud, breach of obligation of good faith and fair dealing, and violation of Montana's Unfair Trade Practices and Consumer Protection Act of 1973.

Transamerica timely removed the case, claiming the Court has original jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Defendant Danny Cox is a citizen of Montana, as is Gillhouse, but Transamerica insists Cox was fraudulently joined and Gillhouse cannot state a viable claim against him due to the fact that the claims against Cox are barred by the applicable statute of limitations and were otherwise resolved and released by the San Diego Superior Court's Final Order and Judgment in <u>Natal, et al. v. Transamerica Occidental Life Insurance Company, et al.</u>, No. 694289 (1997).

In July 1997, the <u>Natal</u> judgment resolved on a class-wide basis all class members' claims regarding the "marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement (by means of surrender, partial surrender, loans respecting, withdrawal and/or termination)" of universal life insurance polices sold by Transamerica. <u>Natal</u> Judgment at 76 (dkt #5-1). Class members included all individuals "who had as of February 24, 1997 . . . an ownership interest in one or more . . . universal life insurance policies . . . issued from January 1, 1981 through June 30, 1996," unless

they timely excluded themselves from the class. Id. at 73-74, ¶ 2.

There is no dispute that Gillhouse's current claims fall within those released by the Natal judgment. Instead, the contest here turns on whether Gillhouse brought his claims against Cox in a timely manner, and whether he received proper notice of the Natal class action to be bound by it.

### III.  Motion to Remand

Defendants may remove a civil action brought against them in state court if federal courts have original jurisdiction over the case. 28 U.S.C. § 1441. Diversity of citizenship jurisdiction exists despite the presence of a non-diverse defendant if that defendant was fraudulently joined. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998), cert. denied, 525 U.S. 963 (1998). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' " Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)). A defendant is fraudulently joined if all claims against him are barred by the applicable statute of limitations. See Ritchey, 139 F.3d at 1318-19. In resolving an issue of fraudulent joinder, the Court may pierce

the pleadings. McCabe, 811 F.2d at 1339.

Transamerica argues that Cox is a sham Defendant because the claims against him are untimely. There is no dispute that all of Gillhouse's claims carry either a two- or three-year statute of limitations.[1] Nor is it contested that those claims are based on alleged misrepresentations that occurred in 1987. Gillhouse insists, however, that his claims are not untimely because the statute of limitations were tolled due to fraudulent concealment and self-concealment. Presuming his claims merit tolling on such grounds, Gillhouse's claims are still stale.

"For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in the discovery of the facts constituting the fraud or deceptive practice." Osterman v. Sears, Roebuck & Co., 80 P.3d 435, 441 (Mont. 2003). The relevant test "is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation.' " Id. (quoting Johnson v. Barrett, 983 P.2d 925, 927 (Mont. 1999)). As discussed in greater detail below, the Natal class

---

[1]Gillhouse's claims for negligent misrepresentation and breach of the covenant of good faith each carry a three-year statute of limitations, Brewington v. Employers Fire Ins. Co., 992 P.2d 237, 241 (Mont. 1999) (breach of the covenant of good faith); Cechovic v. Hardin & Assocs., Inc., 902 P.2d 520, 529 (Mont. 1995) (negligent misrepresentation), and his claims for constructive fraud and violation of Montana's Consumer Protection Act carry a limitations period of two years. Osterman v. Sears, Roebuck & Co., 80 P.3d 435, 440-41 (Mont. 2003).

action required notice be sent to over 750,000 class members. Gillhouse fit the parameters of who was mailed notice in that action. Notice was also published in over 80 newspapers with a combined daily circulation in excess of 26 million, and newspapers throughout the country published articles about the settlement. The thorough notice process in <u>Natal</u> and resulting media coverage provided sufficient circumstances to put a "reasonable person on inquiry" in 1997 of the facts supporting the allegations of fraudulent conduct in this case.

As such, it is clear under the settled rules of Montana that the claims against Defendant Cox are time barred. That leaves only citizens of different States with an amount in controversy exceeding $75,000 in this case. The Court thus has original jurisdiction over the matter under 28 U.S.C. § 1332.

### IV. Motion to Dismiss

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, accepting all well-pled facts as true, the operative pleading fails to state a plausible claim upon which relief may be granted. <u>Hebbe v. Pliler</u>, 627 F.3d 338, 341-42 (9th Cir. 2010). In ruling on such a motion, the Court may consider not only the complaint but also "documents incorporated [therein] by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668

(9th Cir. 2001). In determining if Gillhouse stated a cognizable claim, the Court looks not only to the Complaint itself but also the Transamerica policy and the Natal judgment, a matter of "public record." See Mullis v. U.S. Bankr. Court for Dist. of Nev., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

"[A] judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under [28 U.S.C. § 1738]." Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 374 (1996). Such credit though is not owed if the "rendering forum lacked jurisdiction over the subject matter or the parties." Id. at 386. Here, the Natal judgment, on its face, makes clear that the court fully and in a fair manner considered and decided that it had jurisdiction over the subject matter. See Natal Judgment at 39, ¶ 74.

Gillhouse argues, however, that he cannot be bound by the Natal judgment because he did not receive notice of the class action. He states he has no recollection of receiving any notice, and Transamerica has produced no tangible verification that he had in fact received notice.

Due process requires a class member receive "notice plus an opportunity to be heard and participate in the [prior] litigation" before the judgment can be found to bind him. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 (1985). This

does not entitle Gillhouse to "actual notice," Dusenbery v. United States, 534 U.S. 161, 170 (2009), but rather the best notice that was practicable and reasonably calculated under all circumstances to apprise him of the pendency of the class action and be given a chance to be heard. Id. at 170-71; see also Fed. R. Civ. P. 23(c)(2). To assess the adequacy of the notice, the Court looks to "both the notice's mode of dissemination and its content." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 231 (D. N.J. 1997).

Before judgment was entered in Natal, Transamerica provided notice "to the last known addresses of Class Members found in Transamerica's records." Natal Judgment at 32, ¶¶ 57-58. This resulted in Transamerica mailing approximately 750,000 notice packages. Id. The notices were reader friendly, described the litigation and the settlement, identified class counsel, and included information on the scheduled fairness hearing. The notices also explained how a member could make an appearance, the consequences of remaining in the class, and included a toll-free telephone number class members could call for further information about the proposed settlement. Id. at 30-31, ¶¶ 53-54. Notices that were returned without forwarding addresses were researched to locate a new address and re-mailed. Id. at 33, ¶ 58. Supplementing this notice by mail, Transamerica published notice in 80 newspapers–including "the daily newspaper with the largest

circulation in each state." Id. at 33, ¶ 59. In doing so, notice was publicized in over 26 million newspapers. The Natal court also noted that such publication resulted in "articles about the proposed settlement . . . in newspapers and other publications throughout the country." Id. at 33, ¶ 60.

Considering this mode of dissemination along with the content of the notice, the Natal court found the notice

> (i) constituted the best practicable notice under the circumstances to Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, their right to object or to exclude themselves from the proposed settlement and to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with the requirements of the United States Constitution, the California Constitution, California law, and the Rules of the Court.

Id. at 74-75, ¶ 4. Given the exhaustive nature and substance of the notice, the Court agrees and finds the notice provided in Natal was the best notice practicable and reasonably calculated under all circumstances to apprise Gillhouse of the pendency of that class action. Accordingly, the Natal judgment is afforded full faith and credit.

So deserving, the Court gives the Natal judgement the same preclusive effect a California state court would. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Under California law, res judicata applies when

"1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication." Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal.App.4th 1053, 1065 (Cal. Ct. App. 1998).

All three factors are met in this case. As already discussed, Natal covered the same claims Gillhouse now asserts. Nor is there any question that the Natal judgment is final for purposes of claim preclusion. See Natal Judgment at 75, ¶ 7 ("[T]his Final Order and Judgment . . . shall be forever binding on, and shall have res judicata and preclusive effect in all pending and future lawsuits maintained by plaintiffs and all other Class Members . . . ."). As for the third factor, the Natal class included individuals with an ownership interest in Transamerica policies between 1981 and 1996. Gillhouse purchased his policy in 1987, and he did not exclude himself from the class action. This makes him a party to the Natal judgment for purposes of res judicata.

## V. Conclusion

Based on the foregoing,

IT IS HEREBY ORDERED that Plaintiff Gillhouse's Motion to Remand (dkt #9) is DENIED.

IT IS FURTHER ORDERED that Defendant Transamerica's Motion to Dismiss (dkt #3) is GRANTED. This case is DISMISSED WITH PREJUDICE.

Dated this 16th day of August, 2011.

/s/ Donald W. Molloy
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT